IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| CAROLINE PURVIS, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. G-10-520 |
| | § | |
| TEXAS A & M UNIVERSITY, | § | |

OPINION AND ORDER

Before the Court, with the consent of the parties, is Defendant Texas A & M University's Motion to Dismiss.  (Docket Entry ("Dkt.") No. 3).  Plaintiff Caroline Purvis filed a Response to the Motion and, in the Response, requested leave to file an amended complaint.  (Dkt. No. 5). The Court granted the request for leave (Dkt. No. 17) and Plaintiff filed her First Amended Complaint on June 30, 2011.  (Dkt. No. 13).  Defendant then filed a Supplemental Motion to Dismiss.  (Dkt. No. 20).  Despite having ample time to do so, Plaintiff filed no response to Defendant's Supplemental Motion.   After careful consideration of the Motion and the Supplemental Motion, the response, and the applicable law, the Court now issues this Opinion and Order.

## I.  FACTUAL BACKGROUND

Plaintiff Caroline Purvis brought this action pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983 against Defendant Texas A & M University ("the University").  Purvis' claims arise out of the University's decision to deny her re-admission to its Texas Maritime Academy ("the Academy").  (Dkt. No. 13).

By way of background, Purvis alleged in her Amended Complaint that she was admitted to the University for the 2005 Fall semester with the intention of majoring in Marine Transportation. (*Id.* at 2, ¶8). To further her goals, Purvis also applied to the Academy and was admitted to the institution in the Fall of 2005. (*Id.* at 2,¶ 9).

In July 2006, the Academy joined with the California Maritime Academy in Vallejo, California, for shipboard cadet training and students were required to have student health insurance through the University. (*Id.* at 3, ¶13). During her participation in this joint program, Purvis injured her back in July 2006, when she was on board the GOLDEN BEAR while it was docked in Zihuatejo, Mexico. (*Id.* at 3, ¶ 17). Dr. Garcia-Gallegos, M.D. treated Purvis for her injury.[1]

When the fall semester began at the University, Purvis remained under medical care. On October 9, 2006, Dr. Garcia-Gallegos wrote a letter to Dr. Bob Sindylek, Ed.D., LPC, director of counseling at the University, and advised him that Purvis was still under his care and that he was attempting to determine the cause of her neurological complaints. (*Id.* at 3, ¶ 18). Based on the letter to Dr. Sindylek, Purvis withdrew from the Academy on October 19, 2006, until such time as her medical condition resolved. (*Id.* at 4, ¶19). Purvis also withdrew from the Corp of Cadets several days later. (*Id.* at 4, ¶21). Despite withdrawing from the Academy and the Corp, Purvis was able to attend classes in General Studies.[2] (*Id.* at 4, ¶24).

---

[1] Based on the record, it appears that Purvis was also treated by other providers.

[2] Purvis contends that she withdrew from the University in October 2006. (*Id.* at 4, ¶20). Given this fact, along with her other pleadings, it appears that Purvis may have attended classes at Galveston College where she explains that she obtained a degree in General Studies in December 2009. (*See id.* at 4-5, ¶¶24, 35).

More than two years after she withdrew from the Academy, Purvis applied for re-admission into the program on April 19, 2009.  (*Id.* at 4, ¶ 25).  Purvis contends that only days after she applied, she visited the office of William McMullen, Interim Head of Maritime Transportation and, while in the next room, she claims to have overheard a conference call where the caller remarked that "Caroline had high grades" to which McMullen agreed, but he noted that he had "her UTMB medical records" and, while commenting on the sensitivity of the subject matter (*Id.* at 4, ¶¶27-28), concluded that she was not fit for the program.  (*Id.* at 5, ¶ 29).

Several months later, on July 7, 2009, Purvis met with Dr. Sindylek.  During the meeting Dr. Sindylek asked Purvis if she would undergo some testing for learning disabilities.  (*Id.* at 5, ¶36).  Purvis initially agreed to the testing and Dr. Sindylek scheduled an appointment for her with Dr. Rick Erte for July 28, 2009.  (*Id.* at 5, ¶37).  However, Purvis later declined to undergo the testing "because she felt that her disability", which she explained is an "auditory learning disability," "had nothing to do with the learning process" and it had never been an issue in her previous attendance at the University.  (*Id.* at 6, ¶¶ 38, 40).[3]

Purvis alleges that two days after her meeting with Dr. Sindylek, she received an email from Sarah Tombley, the Associate Director of Admissions, who explained that she would not be re-admitted to the Academy because Dr. Sindylek had not approved he; Tombley suggested that she should explore other options, such as Maritime Administration.  (*Id.* at 6, 42).  Purvis filed a complaint with the University on July 23, 2009, but she asserts that nothing resulted from her complaint.  (*Id.* at 7, ¶46).

---

[3] The record does not reflect when Purvis made and/or communicated her decision.

On July 23, 2009, Purvis received a formal denial letter from William W. Pickavance, Rear-Admiral and Superintendent of the Academy ("Pickavance").  In the letter, Pickavance informed Purvis that her application for re-admission to the Academy was denied until she could provide proof of overall health and fitness.  (*Id.* at 5, ¶31).  Purvis alleges that she was perplexed by this reason because she had already provided the University a July 31, 2007, release from her chiropractor, Dr. Duchon, who opined that "[she] had sufficiently recovered from her lumbar spine injury to fully perform all duties required of her."  In addition to Dr. Duchon's release, Purvis alleges that she submitted releases from a doctor at UTMB.  (*Id.* at 5, ¶¶33-35; at 8, ¶56).

Purvis then proceeded to file a number of complaints against the University for denying her re-admission to the Academy program, but she maintains that the University never ruled on any of her complaints.  (*Id.* at 7, ¶¶ 47, 48).  Instead, Purvis asserts that on August 21, 2009, she received an email from the University denying her re-admission.  Purvis contends that the University also forwarded her a "August 12, 2009 letter/memo" which explained that her application for re-admission was denied because "there were inconsistencies between [her] records on file with the institution and her current physical form which was attached to the application for readmission."  (*Id.* at 7-8, ¶¶51-52).  In particular, the "letter/memo" detailed that in her application she responded that she had not suffered from impaired range of motion or impaired balance or coordination", but this was inconsistent with the University's records that revealed that she had previously reported a physical disability due to a ruptured disc and that Pickavance considered this omission in her application for re-admission to be misleading.  (*Id.* at 8, ¶53).  On August 25, 2009, Purvis received a formal letter from Pickavance that reiterated the denial of her application for re-admission into the program.  (*Id.* at 7, ¶¶49-50).

4

Purvis contends that the University's "new reason for [the] denial of [her] admission" is nothing more than a ruse[4] and she insists the real reason that she was denied re-admission to the Academy was because the University perceived her has suffering from a disability, in particular, an "auditory learning disability."  Purvis also insists that, in denying her re-admission to the Academy, the University discriminated against her on the basis of gender because, unlike her, similarly situated male students were re-admitted to the Academy when they recovered from injuries.

Based on these grounds, Purvis brings claims against Defendant alleging the following violations: (1) sexual discrimination under Title IX of the Education Amendments of 1972 ("Title IX") (20 U.S.C. § 1681 *et seq.*); (2) Section 504(a) of the Rehabilitation Act ("Section 504") (29 U.S.C. § 794); and (3) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. ("Title II").  Defendant Texas A & M University filed a Motion to Dismiss (Dkt. No. 3), to which Plaintiff responded; and then, after Plaintiff amended her Complaint, Defendant filed a Supplemental Motion to Dismiss (Dkt. No. 20), to which Plaintiff filed no response.  The Motions are now ripe for adjudication.

---

[4] Purvis argues that the University fabricated this "new reason" for denying her admission because she previously informed the University of her injury, that she withdrew from the program in October 2006 due to the injury, and that the releases she submitted from her doctors establish that she is fit for duty.  (*Id.* at 8, ¶54).  Purvis further explains that although her chiropractor opined in October 2006 that she might have a ruptured disc her doctor at UTMB ordered an MRI of her lumbar spine on May 2, 2007, which revealed that it was within normal limits and effectively ruled out any such possibility.  (*Id.* at 8-9, ¶¶55-57).

## II.  DISCUSSION

In its Motion to Dismiss, the Defendant University initially moves for dismissal of Purvis's ADA claim based on sovereign immunity. In the alternative, Defendant moves for dismissal of all the claims against it on the basis that Purvis does not adequately state claims upon which relief can be granted.  The Court will begin by addressing the jurisdictional issue raised and then proceed to address Defendant's contentions that Purvis has failed to state claims against it.

### A.  Rule 12(b)(1) Motion[5]

The Eleventh Amendment to the United States Constitution has been interpreted as a bar to suits brought against states or state agencies by one of its citizens unless the state specifically waives its immunity or Congress, in enacting a particular statute, intentionally abrogates the states' sovereign immunity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  In the present case, the Defendant University is a state instrumentality and, hence, as a general rule, it cannot be sued unless it has unequivocally waived immunity or Congress has clearly abrogated state immunity.  *See* TEX. EDUC.CODE  §§ 86.02; 87.201; *Will*, 491 U.S. at 66; *see also*, *Chacko v. Texas A&M Univ.*, 960 F.Supp. 1180, 1198 (S.D.Tex. 1997);  *Zentgraf v. Texas A&M Univ.*, 492 F.Supp. 265, 271-72 (S.D.Tex. 1980).  However, with regard to her ADA claim, Purvis maintains that Congress has abrogated state immunity.

---

[5] A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction. FED. R.CIV. P. 12(b)(1); *see generally*, *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

The ADA provides that "[a] State shall not be immune" from suits under the Act because of sovereign immunity (42 U.S.C. § 12202); however, the Supreme Court has made clear that this waiver is not absolute because Congress has the power to abrogate state sovereign immunity only where it "act[s] pursuant to a valid grant of constitutional authority." *Bd of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).  Within the context of ADA claims, the Court has determined that a State's immunity is waived only in limited contexts.  *See id.*  In particular, the Court has, thus far, determined that immunity is only abrogated in cases implicating issues regarding access to courts (*Tenn. v. Lane*, 541 U.S. 509 (2004)), or in cases where there is a violation of a fundamental right under the Fourteenth Amendment.  *United States v. Georgia*, 546 U.S. 151, 159 (2006).   In the present case, there are no allegations that implicate issues concerning access to courts, hence, the only question is whether Purvis' ADA claim sufficiently alleges a violation of a fundamental right under the Fourteenth Amendment upon which the Defendant's immunity is abrogated.

The Supreme Court has explained that whether a Title II ADA plaintiff alleges a Fourteenth Amendment violation must be viewed "on a claim-by-claim" basis.  *Georgia*, 546 U.S. 151.  To determine whether immunity has been abrogated for ADA claims, a  court is instructed to evaluate the claim by considering the following three factors:  (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such conduct also violates the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.  *Id.*

With regard to the first factor, Defendant contends that for purposes of the ADA, Purvis has failed to state facts that demonstrates that she has a "qualifying disability" that "substantially limits" a "major life activity." (Dkt. No. 20 at 5).  The Court cannot agree.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by an such entity."  42 U.S.C. § 12132 (2009). For purposes of Title II, a "qualified person with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2) (2009). Significantly, under the Act, "'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."  42 U.S.C. § 12102(1) (2009);  *see Hale v. King*, 624 F.3d 178 (5th Cir. 2011) (court reversed and remanded action to permit plaintiff the opportunity to amend his complaint to plead claim under Title II).  Paragraph (3), entitled "Regarded as having such an impairment," provides:

> [f]or purposes of paragraph (1)(C): (A) An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an ***actual or perceived*** physical or mental impairment ***whether or not the impairment limits or is perceived to limit a major life activity***.  (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor.  A transitory impairment is an impairment with an actual or expected duration of 6 months or less."

[Emphasis added].  42 U.S.C. § 12102(3) (2009).

In her First Amended Complaint, Purvis asserts a claim entitled "complaint of discrimination - disability" and, in support of this claim, alleges that "she was discriminated against in the educational process because of her disability, and her disability became a factor in denying her readmission into the Academy.  When [she] insisted that her disability should not be a factor, the decision maker for the institution made clear that his decision would not change." (Dkt. No. 13 at 9, ¶ 58).  Moreover, in support of her claim, Purvis alleges: (1) that she has "an auditory learning disability," but explains that her disability had "never been an issue in her previous attendance at the University"; (2) that, as part of her request for re-admission, she met with Dr. Sindylek on July 7, 2009, and he advised her that he wanted her to undergo some testing for learning disabilities; (3) that Dr. Sindylek scheduled an appointment for this testing with Dr. Rick Erte for July 28, 2009; (4) that, while she initially agreed to take the test, she ultimately declined to undergo the testing because she felt that her disability had nothing to do with the learning process; (5) that on July 9, 2009, she received an email from Sarah Tombley, Associate Director of Admissions, which explained that she would not be re-admitted to the Maritime Academy because Dr. Sindylek had not approved her, and advised her to explore other options such as Maritime Administration (non-licensed option); and (6) that on July 23, 2009, despite the fact that she had already submitted doctor's releases to the University reflecting that she was fit, she received a letter from William W. Pickavance, Rear Admiral, Superintendent, Texas Maritime Academy, denying readmission to the Academy until she could provide proof of overall health and fitness.  Based on her pleading, Purvis appears to allege that she was discriminated against in violation of the ADA based on a perceived disability and, as set forth in the Act, a perceived disability can form the basis of a discrimination claim under Title II.

9

Defendant also claims Purvis has not alleged a violation of Title II because she has failed to allege any facts that would demonstrate a causal link between her claimed disability and her non-selection for the Academy.  (Dkt. No. 20 at 5).  However, under Title II of the ADA, "discrimination need not be the sole reason" for the exclusion of or denial of benefits to the plaintiff[6] and, here, Purvis' factual pleadings create an inference that her "auditory learning disability" could have been a reason for the denial of her re-admission into the Academy.

Turning to the second factor, the Court is instructed to consider whether there is a Fourteenth Amendment violation.  Defendant maintains that Purvis' allegations do not implicate Fourteenth Amendment concerns and, in fact, "[n]o such violation is plead here."  (Dkt. No. 20 at 5-6).  It is true that Purvis' allegations do not implicate a fundamental right under the Fourteenth Amendment.  *See e.g.*, *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 33-37 (1973) (education has not been identified as a fundamental right); *City of Cleburne v. Cleburne Living Ctr. Inc.*, 473 U.S. 432, 442-47 (1985) (disabled person is not  a suspect classification and state action affecting the disabled is subject only to a rational basis review).  Notwithstanding, the Supreme Court has signaled to lower courts that *Tennessee v. Lane*, 541 U.S. 509(2004) requires them to consider whether Congress nonetheless validly abrogated sovereign immunity for ADA claims even if the violation does not directly infringe upon a claimant's fundamental right.  *See*, *Doe v. Bd. of Regents of Univ. of Nebraska*, 788 N.W. 2d 264, 287 n. 104 (Neb. 2010) (collecting cases).  Thus, it appears that a State's disparate treatment of a person in a state

---

[6] *Soledad v. U.S Dept. of Treasury*, 304 F.3d 500, 503-04 (5th Cir. 2002) (quoting *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 253 (5th Cir. 1996)).

educational program may trigger Fourteenth Amendment protections, albeit under the rational basis test.  *Id.* at 287-90.

Defendant does not appear to refute this, but, instead, merely argues that Purvis' own complaint provides a rational basis for her non-selection.  In particular, Defendant contends that a rational basis existed for Purvis' non-selection because she alleges that the Defendant informed her that she was not selected for re-admission because her application contained conflicting information regarding her health history that it felt was misleading.  (Dkt. No. 14 at 8, ¶¶ 52, 53).[7]  While it is true that Purvis explained the "new reason" Defendant gave her for her non-selection, she also suggests that this "new reason" was merely manufactured by the University to justify its decision because it completely ignores the medical releases she previously provided to the University,  as well as the medical records reflecting that she did not, in fact, suffer from a ruptured disc in her back.  Based on the pleadings alone, this Court cannot at this point in the litigation conclude that a rational basis existed for the University's decision.

The third factor set forth in *Georgia* instructs a court to determine whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid  when the alleged conduct violates Title II, but not the Fourteenth Amendment.  Defendant does not address this third factor.  However, insofar as Purvis has alleged both a Title II claim and a Fourteenth Amendment claim, this factor appears to have little relevance.

---

[7] Given her pleadings, it appears to this Court that the basis of Purvis' ADA claim rests on her "auditory learning disability," not on any alleged back injury that she suffered while on-board the GOLDEN BEAR; whereas, it appears that her back injury forms the basis for her claim under Title IX insofar as she has alleged that male cadets were re-admitted into the Academy after being injured while working on-board a ship.

Finding that the determination of the *Georgia* factors weigh in favor of Purvis,[8] the Court

concludes that Defendant's 12(b)(1) Motion to Dismiss must be **DENIED**.

### B.  Rule 12(b)(6) Motion[9]

In the alternative, Defendant moves for dismissal of Purvis' ADA claim, as well as all the

other claims, on the ground that she fails to state a claim upon which relief may be granted.   The

Court addresses each claim in turn.

#### 1.  Title II ADA Claim

Defendant seeks dismissal of Purvis' Title II claim on the ground that she fails to state a

claim.   However, for the reasons discussed above, the Defendant's Motion to Dismiss must be

**DENIED**.

---

[8] Unlike this case which involves equal access, in *Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005), the court addressed claims involving "reasonable accommodation." In that context, the Fifth Circuit determined that the plaintiff's Rehabilitation Act ("RA") reasonable accommodation claim was merely duplicative of its Title II claim under the ADA and, as such, the fact that the State waived immunity under the RA claim made it unnecessary for the court to address whether there was an abrogation of immunity under Title II.

[9] Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007); *see also*, *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). A court should not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). However, this requires more from a plaintiff than pleadings consisting only of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, _U.S._, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Twombly*, 550 U.S. at 550 (explaining that "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" ). Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks, citations, and footnote omitted).

## 2. Rehabilitation Act Claim

Purvis alleges Defendant's conduct violated the Rehabilitation Act, 29 U.S.C. § 794. Defendant moves for dismissal of Purvis' claim under the Rehabilitation Act on[10] the ground that she fails to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6).

Section 504 prohibits discrimination against students attending universities that receive federal financial assistance. *See* 29 U.S.C. §§ 794(a), (b)(2)(A). The purpose of the Section 504, like that of Title II of the Americans with Disabilities Act ("ADA"), is to eliminate discrimination against individuals with disabilities. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 291 (5th Cir.2005). Notably, § 504 incorporates not only the definitions, but also the standards used in ADA cases. 29 U.S.C. § 791(g); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995).

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To establish a claim for relief under § 504, the plaintiff must establish (1) that she is an "individual with a disability," (2) that the at-issue "program or activity" is federally funded, and (3) that she is "otherwise qualified" to participate in the targeted program. *See Doe v. Region 13 Mental Health-Mental retardation Comm'n*, 704 F.2d 1402, 1408 (5th Cir. 1983). A person is "otherwise qualified" if she is able

---

[10] Immunity is waived for claims brought under the Rehabilitation Act. *See* 42 U.S.C. § 2000d-7; *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005); *Miller v. Texas Tech. Univ. Health Sciences*, 421 F.3d 342, 349-51 (5th Cir. 2005); *Durrenberger v. Tex. Dep't of Crim. Justice*, 757 F.Supp.2d 640, 646-48 (S.D. Tex. 2010).

to meet all of the targeted program's requirements in spite of the alleged disability. *Id.* at 1408.

Purvis has alleged that the University perceives her as an individual with a disability, that the University's Academy program is federally funded and that she was otherwise qualified to participate in the program. Assuming, as it must, that Purvis' factual allegations are true, the Court concludes that she has stated a claim under § 504 of the Rehabilitation Act with sufficient particularity to survive the Defendant University's Motion and Supplemental Motion to Dismiss. Thus, Defendant's Motion and Supplemental Motion on this issue is **DENIED**.

### 3.  Title IX Claim

In her Amended Complaint, Purvis also alleges that she was discriminated against on the basis of gender when she was denied re-admission to the Maritime Academy. In particular, Purvis asserts that "male cadets have been injured while performing their roles as students but have not been excluded from readmission if and when they were cleared by medical examination." (Dkt. No. 13 at 9, ¶60). Defendant moves for dismissal of Purvis' Title IX claim on the ground that she fails to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). Defendant argues that Purvis' allegations are nothing more than conclusory , that she "does not claim that her auditory disability was caused by injury," that she does not claim "what, if any, disability she has" and that she "does not cite any male cadets with auditory disabilities who were treated different." (Dkt. No. 20 at 9; *see also*, Dkt. No. 3 at 5-6).

Title IX provides, in relevant part, that "[n]o person … shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance …." 20 U.S.C. § 1681(a).

To prevail under Title IX,[11] a private litigant must prove that: 1) the defendant engaged in intentional discrimination based on gender[12]; and 2) the defendant received federal financial assistance.  20 U.S.C. § 1681

When evaluating whether the pleadings are sufficient to allege intentional discrimination under Title IX, courts have employed the analytical approach and legal authority used in Title VII cases.  *See Bisong v. Univ. of Houston*, 493 F.Supp.2d 896, 904-05 (S.D.Tex.2007); *Baldwin v. Univ. of Tex. Med. Branch at Galveston*, 945 F.Supp. 1022, 1031 (S.D.Tex.1996).  Thus, to establish a *prima facie* case of discrimination in the academic setting, Purvis must demonstrate that she: (1) is a member of a protected class; (2) met the university's legitimate expectations; (3) suffered an adverse action; and (4) was treated differently because of the protected characteristic or was treated less favorably than nearly identical, similarly situated individuals who were not members of the protected class.  *See Bisong*, 493 F.Supp.2d at 906 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

In the present case, Purvis alleges that, as a female, she is a member of a protected class. She alleges that she was previously admitted to the University's Academy program in 2006, and after she recovered from her back injury, her doctors released her from their care and determined that she was fit to resume her duties in the program.  Purvis also alleges that, despite the fact that

---

[11] Title IX was patterned after Title VI and contains nearly identical language, except that it protects against gender discrimination.  *Compare* 42 U.S.C. § 2000d *with* 20 U.S.C. § 1681; *see also*, *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

[12] *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *Fort v. Dallas Indep. Sch. Dist.*, No. 95-10323, 1996 WL 167072, at *3, n. 3 (Mar. 11, 1996) (unpublished) (mentioning split in circuits and citing *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993), as holding that intentional discrimination standard applies to Title IX claims).

she submitted documentation establishing that she had been medically released and met the all other program requirements, the University denied her Application for re-admission to the Academy.  Finally, Purvis alleges that, in so doing, the University has treated her differently than male cadets in similar positions because she maintains that after male cadets are medically cleared to return to duty, the University has permitted them back into the program, whereas it denied her request.  Based on the factual allegations in Purvis' Amended Complaint, the Court concludes that her pleadings are sufficient to state a *prima facie* claim under Title IX.[13]  Accordingly, the Court concludes that Defendant's Motion and Supplemental Motion to Dismiss should be **DENIED** on this point.

CONCLUSION

Accordingly, for all the foregoing reasons, it is the **ORDER** of this Court that Defendant Texas A & M University's Motion and Supplemental Motion to Dismiss (Dkt. Nos. 3, 20) are **DENIED**.

**DONE** at Galveston, Texas, this _____8th_____ day of November, 2011.

_____
John R. Froeschner
United States Magistrate Judge

---

[13] The Court is mindful that the United States Supreme Court has cautioned courts against second-guessing a university's academic decisions.  *See, e.g.*, *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision, … they should show great respect for the faculty's professional judgment."); *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 (1978) ("Courts are particularly ill-equipped to evaluate academic performance.").  However, at this stage of the litigation, the Court is reluctant to summarily foreclose Purvis' claim on this basis.

16