IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| CAROLINE PURVIS, | § § | |
| Plaintiff | § § § § | |
| vs. | § | CIVIL ACTION NO. G-10-520 |
| | § § | |
| TEXAS A & M UNIVERSITY, | § § | |
| Defendant. | § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is Defendant Texas A & M University's Motion for Summary Judgment. (Docket Entry (Dkt.) No. 54). Plaintiff Caroline Purvis filed a Response (Dkt. No. 59) and then a reply and sur-reply were filed by the parties. (Dkt. Nos. 60, 61). After careful consideration of the Plaintiff's Third Amended Complaint, and the parties' relevant submissions, the Court now issues this Opinion and Order.

## I. FACTUAL BACKGROUND

Plaintiff Caroline Purvis (Purvis) brought this action under the Rehabilitation Act, the Americans with Disability Act, and Title IX alleging Texas A&M University (University) discriminated against her when it denied her application for re-admission to the Texas Maritime Academy. (Dkt. No. 46).

The relevant facts in this case are not particularly complex. The University has a campus located in Galveston, Texas (TAMUG) that offers undergraduate and graduate degrees in ocean-

1

related academic disciplines. (Dkt. No. 54 (Lang Affidavit) at Appx. at 2). Also located on this campus is the Texas A&M Maritime Academy (Maritime Academy), which is one of only seven maritime academies in the United States. (*Id.* at Appx. at 2-3). Individuals who are interested in attending the University must submit an application for enrollment and, if they are seeking to pursue a "license option,"[1] a separate application to the Maritime Academy is also necessary. (*Id.* at Appx. at 3-4). Admission into the University does not guarantee that the individual is qualified for admission to a "license option" at the Maritime Academy.[2]

Purvis applied for, and received admission into, TAMUG for the 2005 fall semester. Because Purvis intended to pursue one of the "license options" (*i.e.,* Marine Transportation or "MART"), she also applied for admission to the Maritime Academy. In her application for the Maritime Academy, Purvis signed the 2005 Physical Report certifying that she had no past or present medical conditions or physical impairments. (Dkt. No. 54, Appx. at 61; 124-25; Purvis Depo. at 455:6-22). Based on the representations made in her application, the Maritime Academy admitted Purvis into the license option MART program. (*Id.*, Appx. at 165).

During the summer after completing her first year, Purvis elected to participate in the joint program with the California Maritime Academy and, while aboard the GOLDEN BEAR, she

---

[1] The Maritime Academy offers four programs: Marine Biology, Marine Sciences, Marine Engineering Technology and Maritime Transportation (MART). (Dkt. No. 54, Appx. at 2 (Lang Affidavit). Relevant in this case is the MART program which is designed for students seeking licensure as professional mariners in the U.S. Merchant Marine. (*Id.*). Graduates of this program receive not only a degree from the University, but also a merchant marine officer's license to go to sea. (*Id.* at 3-4).

[2] Due to demands of the maritime industry and the mandates of the United States Coast Guard, the Maritime Academy requires all applicants to a "license option" program submit proof of citizenship and fitness, physical and non-physical. (Dkt. No. 54, Appx. at 4 (Lang Affidavit); Appx. at 23-24 (Roth Affidavit)).

reported experiencing back pain, weakness in her legs, difficulty walking and stiffness. (Dkt. No. 54, Appx. at 166-76; 241). Upon returning to Galveston, Purvis began treatment for these conditions, which included neurological complaints.[3] Because she was still under medical care when the fall semester began, Purvis ultimately decided to withdraw from both the University and the Corp of Cadets in October 2006. (*Id.*, Appx. at 5 (Lang Affidavit); Appx. at 212 (Sindylek Affidavit); Appx. at 224-226).

Several years later, Purvis applied for re-admission to TAMUG and the Maritime Academy.[4] (Dkt. No. 46 at 6, ¶ 36; Dkt. No. 54 at 9-11 & Appx at 260-265). When Purvis completed her application for re-admission to the Maritime Academy, she signed the 2008 Health Report certifying that, except for corrected vision, she had no past or present medical conditions or physical impairments. (Dkt. No. 54, Appx. at 265). Purvis's application was received by the University on January 6, 2009. (*Id.* at 260-65).[5]

---

[3] Contained in the record is Purvis's "diary" in which she chronicles the medical issues that she experienced while onboard the ship and then, thereafter, when she returned to Galveston for treatment. (Dkt. No. 54, Appx. at 166-190). During this time period, Purvis claims she experienced symptoms which included weakness in her legs, lower back pain, overall weakness, dizziness, skin rashes, swelling and numbness in finger(s), ongoing knee problems, chest pain, light sensitivity, swelling of her left eye, tremors, shortness of breath, bowel problems, anxiety and pain and swelling in her throat. (*Id.*). Notably, Purvis also referenced prior medical conditions in her recount. (*Id.* at 179-181, 183).

[4] In accordance with established procedure, when a University student has withdrawn before completing her education, new applications are required if the student has not been enrolled for one or more "long" semesters (fall or spring). (Dkt. No. 54, Appx. at 4 (Lang Affidavit)). Unlike the initial application process, accompanying an application for re-admission is the student's prior academic record with the school and, in some cases, a disciplinary record and personal relationships with faculty and staff. (*Id.*).

[5] The same completed form (*i.e.*, "Certification of Physical Impairment or Medical Conditions") was file-stamped as received again on April 21, 2009. (Dkt. No. 54, Appx. at 268-69).

On April 22, 2009, Purvis met with the Admiral William McMullen (McMullen),[6] the Department Head of MART, to discuss her application.[7] During the meeting McMullen reportedly told Purvis that she was welcome back to other programs at the University, but he did not at that time think she was fit for the Maritime Academy, at least not as it related to the MART program. (Dkt. No. 54, Appx. at 149-150). Despite his concerns, McMullen reportedly asked Purvis to meet with Robert Sindylek (Sindylek), the University Director of Counseling and Disability Services, before any decision was reached regarding her application. (*Id.* at 266, 271).

Following the April meeting, Purvis made no attempt to meet with Sindylek; instead, she took from the meeting that she had been denied application for re-admission to the Maritime Academy. (Dkt. No. 54, Appx. at 271, 276). Thereafter, and despite an email from McMullen clarifying that no decision had been made yet,[8] Purvis persisted in her belief that she had been denied admission and this, in turn, prompted her to submit complaints that the decision to deny her re-admission was due to various forms of discrimination. (*Id.* at 276-281).

---

[6] McMullen reportedly passed away in January 2012. (Dkt. No. 54, Appx. at 5).

[7] The Court pauses to note that, during the course of this litigation, Purvis has made reference to a letter of acceptance from Admiral Pickavance and the Texas Maritime Academy dated March 22, 2009, and she complains that she was first "re-admitted" and then "un-admitted" which was unprecedented. (Dkt. No. 59 at 4-5). The Court finds this assertion to have little consequence because it is inaccurate. Based on the undisputed evidence before the Court, this letter was "automatically generated, as part of TAMUG's routine admission process" and "[t]he letter was never sent to Purvis." (Dkt. No. 54, Appx. at 7). Moreover, Purvis does not dispute that she never received the letter and was not even aware of its existence until well after litigation ensued. (Dtk. No. 59 (Purvis Depo.) at 293:16-25; (Mason Depo.) at 18; Pickavance Depo.) at 25).

[8] On May 7, 2009, McMullen reiterated in an email to Purvis that he had not denied her application for admission, but, given her history with the University, she would need to meet with Sindylek before she could be considered for re-admission to the MART program. (Dkt. No. 54, Appx. at 271-75).

In late June 2009, Purvis ultimately agreed to meet with Sindylek. (Dkt. No. 54, Appx. at 215-216). During their July 7, 2009 meeting, Sindylek explained to Purvis that "based upon the health history she herself described in various emails, it was unlikely that [he] would recommend that she be readmitted to the Texas Maritime Academy and MART." (*Id.* at 216).[9] However, attempting to give Purvis the benefit of the doubt, Sindylek asked her to meet with a doctor, not affiliated with TAMUG, for the purpose of undergoing the Minnesota Multiphasic Personality Inventory (MMPI-2).[10] (*Id.*). Purvis, while initially agreeing to be tested, later declined. (*Id.* at 282).

Thereafter, in a letter dated July 23, 2009, William W. Pickavance (Pickavance), Rear-Admiral and Superintendent of the Academy, informed Purvis that her request for re-admission to the Maritime Academy had been denied. In the letter, Pickavance explained:

> The Texas Maritime Academy is responsible to the United States Coast Guard to determine that cadets preparing to become merchant mariners are fit for duty upon entering the maritime industry. In that regard, the USCG clearly states our responsibility as an academy in Navigation and Vessel Inspection (NVIC No. 04-08):
>
>> "Maritime academies should ensure that new entrants into a cadet program are physically and medically qualified".
>
> Upon review of your cadet file, TMA application and merchant mariner physical, it appears that there are inconsistencies. When you left TMA in 2006 you listed a variety of medical issues as the cause for leaving. Upon

---

[9] In the fall 2006 semester, Purvis sent a number of lengthy and sometimes bizarre emails to faculty and/or staff recounting medical issues that prevented her from returning to classes and, in emails she sent subsequent to her withdrawal, she described physical problems and recounted many of her interactions with healthcare providers. (Dkt. No. 54, Appx. at 25 (Roth Affidavit); Appx. at 227-248 (Sindylek Affidavit)).

[10] The MMPI is an accepted diagnostic tool that is used by mental health professionals to assess and/or diagnose mental illness/disorders. (Dkt. No. 54, Appx. at 216).

> review of your most recent application and physical, when asked in Section VII of your physical impairments or medical conditions "no" was checked in several areas where in 2006 you had listed those symptoms in your notice of withdrawal from the [U]niversity.
>
> In addition, you have been asked on numerous occasions by the [U]niversity counseling office to provide documentation of proof of your medical fitness and to be evaluated by a third party to ensure your overall mental health. To this date you have yet to comply. While you are welcome to pursue other degree programs at Texas A&M Galveston, until you have provided satisfactory proof of your overall health and fitness, you will not be admitted to the Texas Maritime Academy.

(Dkt. No. 54, Appx. at 286).[11]

After being denied admission, Purvis filed suit in federal court. In her Third Amended Complaint, she asserts the following causes of action against the University: (1) sexual discrimination under Title IX of the Education Amendments of 1972 (Title IX) (20 U.S.C. § 1681 *et seq.*); (2) disability discrimination under section 504(a) of the Rehabilitation Act (Rehabilitation Act) (29 U.S.C. § 794) and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. (Title II); and (3) retaliation. The University filed a Motion for Summary Judgment (Dkt. No. 54), which is now ripe for adjudication.

## II. STANDARD OF REVIEW

The Court analyzes the University's Motion under the well-established summary judgment standard. Fed. R. Civ. P. 56(c); *see generally, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986);

---

[11] Subsequent letters were sent to Purvis out of a concern that she might not have received the first letter. (Dkt. No. 54, Appx. at 287-289).

*Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## III. DISCUSSION

### A. Claims Under the ADA and Title IX

The University has moved for summary judgment on Purvis's ADA and Title IX claims. (Dkt. No. 54). However, the Court need not address these claims because Purvis has declared that she is "drop[ping] her Title IX clam and also her claim based upon the Americans with Disabilities Act." (Dkt. No. 59 at 1, n. 1). Based on Purvis's representations that she is voluntarily dismissing these claims, the Court concludes that the University's Motion, as it pertains to these claims, is now moot.

### B. Claims Under the Rehabilitation Act

As to Purvis' discrimination claim under section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the University argues that summary judgment is warranted because no evidence supports this claim. (Dkt. No. 54 at 22-29; *see also*, Dkt. No. 60 at 2-8).

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see also, Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 291 (5th Cir.2005) (the purpose of section 504, like that of Title II of the ADA, is to eliminate discrimination against individuals with disabilities); *see generally, Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995) (recognizing that section 504 incorporates not only the definitions, but also the standards used in ADA cases).

In order to establish a claim under either Act, a plaintiff must prove that she: (1) has a disability; (2) was otherwise qualified to participate in the defendant's program; (3) sought entry into a program or activity that receives federal assistance; and (4) was discriminated against solely by reason of her disability. *See Maples v. Univ. of Texas Med. Branch at Galveston*, 901 F.Supp.2d 874, 879 (S.D. Tex. 2012), *aff'd* 524 Fed.Appx. 93 (5th Cir. 2013); *see also, Brown v. Texas State Univ. Syst. Bd. of Regents*, No. A-13-CA-483-SS, 2013 WL 6532025, at 14 (W.D. Tex. Dec. 12, 2013) (noting that while the "Fifth Circuit has not set forth a clear *prima facie* standard for § 504," district courts have required plaintiffs to establish a *prima facie* claim by showing proof of each of these elements).

Assuming, without deciding, that Purvis could even establish she had a disability for purposes of the Act,[12] the record contains insufficient evidence to create a genuine issue of material fact relating to Purvis's claim of discrimination based on disability. First, the Court finds no evidence that Purvis was "otherwise qualified" to participate in the Maritime Academy's MART program when she re-applied for admission in January 2009. To be admitted to this program, applicants are required to "satisfy current U.S. Coast Guard physical standards for

---

[12] The Court pauses to note that Purvis alleged in her pleadings that she has a learning disability, however, aside from her allegation, there is no evidence that this disability exists or the extent of the limits it imposes on her. *See Mosley v. Potter*, No. H-05-2816, 2007 WL 1100470, at *4 (S.D.Tex. April 11, 2007) (recognizing that to establish a "disability" "[a] plaintiff must prove a substantial limit with specific evidence that his particular impairment substantially limits his particular major life activity"). Nor is there any evidence before that Court that anyone questioned Purvis's ability to succeed academically. This, therefore, appears to undercut any argument that her alleged learning disability posed a substantial limitation on her. Regardless, it is not even clear to this Court that this is the disability upon which Purvis ultimately attempts to rely. (*See* Dkt. No. 60 at 3). In her response and sur-reply, Purvis appears to argue that the University treated her as if she had a mental impairment/condition and she was discriminated against on this basis. Even assuming that this were the case, an entity cannot be liable for a failure to accommodate a purely perceived disability. *See Newberry v. East Texas State Univ.*, 161 F.3d 276, 280 (5th Cir. 1998).

8

licensing." (Dkt. No. 54, Appx. at 260); *see also*, 46 C.F.R. § 310.6 (entrance requirements). To ensure that applicants meet the physical standards, a physical examination report is required and "must be completed thoroughly" by a medical provider and, if not complete, will not be accepted. (Dkt. No. 54, Appx. at 260). Applicants are also required to disclose all medications prescribed and the condition(s) for which the medications were prescribed. (*Id*). It is, of course, true that Purvis did submit a Health Report, however, given her own acknowledgment that she failed to disclose her past and present physical impairments and/or medical conditions when she applied for admission and then re-admission to the Maritime Academy (*see* Dkt. No. 54, Appx. 27-29, 61, 69-103, 250-258), no reasonable jury could conclude that the Report was complete or accurate[13] for purposes of concluding that was otherwise qualified for admission.[14]

Second, and perhaps more easily concluded, is the matter of the required causal connection. There is insufficient evidence to create a triable issue of fact that the decision to deny

---

[13] The undisputed evidence reflects that at the time Purvis was preparing her application for re-admission to the Maritime Academy in December 2008, she was suffering from and actively seeking treatment for left-sided abdominal pressure, chest pain, back pain and muscle spasms going down her left leg. (Dkt. No. 54, Appx. at 250-259). The evidence also reflects that she had been suffering from some of these same symptoms for more than five years; nevertheless she failed to disclose this information. (*Id.* at 163-164; Purvis Depo. at 318:4 - 319:3; *see also*, Appx at 50-51; Purvis Depo. at 415:4 - 416:12).

[14] Although an individual with a disability might be otherwise qualified under the Act if a reasonable accommodation exists which will allow her to perform the essential functions of the program (*see Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1077 (8th Cir. 2006)), the burden normally rests with the individual to request an accommodation. *See Burch v. Coca-Cola Co.*, 119 F.3d 305, 318-20 (5th Cir. 1997), *cert. denied*, 522 U.S. 1084 (1998); *Brown v. Kastle Systems of Texas, LLC*, No. H-08-02888, 2010 WL 3342219, at *13 (S.D.Tex. Aug. 25, 2010) (the individual bears the burden of proving that he is qualified for the position and could perform it with reasonable accommodations); *see also, Taylor v. Principal Financial Group Inc.*, 93 F.3d 155, 164-65 (5th Cir.), *cert. denied*, 519 U.S. 1029 (1996) (recognizing that an employer is not required to "assume" an employee with a disability suffers from a limitation and, in fact, the Act discourages employers from making any such assumptions). Here, the record is devoid of any such requests. *See Taylor*, 93 F.3d at 165 (when the individual fails to request an accommodation, he will no longer be considered a qualified individual with a disability and liability will not result).

Purvis's application for re-admission to the MART program was *solely* because of her alleged disability. *See Pinkerton v. Spellings*, 529 F.3d 513, 516 (5th Cir. 2008); *Soledad v. U.S. Dept. of* Treasury, 304 F.3d 500, 505 (5th Cir. 2002). On the contrary, the undisputed evidence reflects that Purvis's lack of candor for re-admission played a significant role in the decision to deny her admission to the Maritime Academy's MART program.[15]

The Court, therefore, concludes that the University's Motion for Summary Judgment on Purvis's discrimination claim under the Rehabilitation Act must be **GRANTED**.

### C. Retaliation Claim[16]

Purvis alleges that the University retaliated against her after she attempted "to seek and receive worker's compensation benefits" and after she filed "complaints of gender and disability discrimination against the school." (Dkt. No. 46 at 12-13, ¶75). The University argues that Purvis's retaliation claims fail as a matter of law and, thus, summary judgment is warranted. (Dkt. No. 54 at 34-36).

In order to establish a claim of retaliation under the Rehabilitation Act, a plaintiff must initially[17] show: (1) that she engaged in protected activity; (2) that her employer took an adverse action against her; and (3) that a causal connection existed between the adverse action and the protected activity. *Cohen v. Univ. of Tex. Health Sci. Ctr at Tyler*, 2013 WL 1281840, at *6

---

[15] The Court pauses to note that Purvis was denied admission to the "license option" program of the Maritime Academy and was not denied admission to the University.

[16] Purvis has dropped her claims under the ADA and Title IX, thus, her claim for retaliation is premised on the Rehabilitation Act. (Dkt. No. 59 at 1, n.1).

[17] The Fifth Circuit applies the burden shifting framework set forth in *McDonnell Douglas* to retaliation claims. *See Shannon v. Henderson*, No. 01-10346, 2001 WL 1223633, at *3 (5th Cir. 2001).

(E.D. Tex. 2013) (citing *Calderon v. Potter*, 113 Fed.Appx. 586, 592 (5th Cir. 2004)); *Higbie v. Kerry*, No. 3:11-CV-2636L, 2014 WL 1012397, at *3 (N.D.Tex. March 4, 2014); *Mosley v. Potter*, No. H-05-2816, 2007 WL 1100470, at *6 (S.D.Tex. April 11, 2007).

Purvis's retaliation claims against the University fail as a matter of law for several reasons. First, despite her allegations, pursuing a claim for worker's compensation benefits is not "protected activity" because it is unrelated to any practice made unlawful by the Rehabilitation Act. *See Mosley v. Potter*, No. H-05-2816, 2007 WL 1100470, *9 (S.D. Tex. 2007). Second, even though the complaints of discrimination that Purvis submitted against the University would appear to constitute protected activity, she cannot show a causal connection between her complaints and the adverse action because Purvis' protected activity occurred after the April 22, 2009 meeting with McMullen – a point in time which Purvis considered that she was denied re-admission to the Maritime Academy. (Dkt. No. 54, Appx. 138-140; Purvis Depo. at 254:12-256:3). *See Davis v. Dallas Indep. School Dist.*, 448 Fed.Appx. 485, 493-94 (5th Cir. 2011) (when protected activity occurs after the adverse decision, plaintiff cannot demonstrate causation for purposes of retaliation claim).

Notwithstanding, even assuming that Purvis could meet her burden, the University has articulated a legitimate non-discriminatory reason for the denial of her re-admission into the Maritime Academy (*see* Dkt. No. 54, Appx. at 286) and she has not shown that this reason was merely pretextual and, but for her complaint, she would have been admitted to the Maritime Academy. *See Swanson v. General Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir.), *cert. denied*, 522 U.S. 948 (1997) (rejecting the notion that temporal proximity, without more, can be sufficient proof of showing causation in retaliation cases); *Rutland-Simpson v. Eli Lilly and Co.*, 940

F.Supp.2d 504, 520-21 (S.D.Tex. 2013), *aff'd*, _Fed.Appx._, 2014 WL 3378328 (5th Cir. July 11, 2014) (concluding that to survive summary judgment, a "[p]laintiff must present substantial evidence on the 'but for' ultimate conclusion"); *Prince v. Danka Corp.*, No. 3:98-CV-2365-H, 2000 WL 234857, at *5 (N.D.Tex. Feb. 28, 2000) (determining that plaintiff did not raise a fact issue that "but for" the protected activity, adverse action would not have occurred).

Accordingly, the Court concludes that the University's Motion for Summary Judgment on Purvis's retaliation claims must be **GRANTED**.

## CONCLUSION

Accordingly, for all the foregoing reasons, it is the **ORDER** of this Court that Defendant Texas A & M University's Motion for Summary Judgment (Dkt. No. 54) is **GRANTED**, and that the action filed by Plaintiff Caroline Purvis is **DISMISSED**, in its entirety, with prejudice.

**DONE** at Galveston, Texas, this 29th day of September, 2014.

JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE